■ In the Matter of the Claim of RHODA ABRAMOWITZ, Respondent. CITY UNIVERSITY OF NEW YORK, Appellant; THOMAS F. HARTNETT, as Commissioner of Labor, Respondent. —Yesawich, Jr., J. Appeal from a decision of the Unemployment Insurance Appeal Board, filed March 21, 1988, which ruled that claimant was entitled to receive unemployment insurance benefits.

Claimant worked at Baruch College of the City University of New York as an associate registrar from September 1980 through August 31, 1984. She was not reappointed for the 1984-1985 academic year. Concurrently, claimant served as an adjunct lecturer for Baruch's English Department, a position she continues to hold.

In September 1984, claimant was awarded partial unemployment insurance benefits as a result of her termination from the registrar position. The University did not contest her eligibility to receive these payments. During the period that she received these benefits, namely, September 6, 1984 through December 23, 1984, which was the fall 1984 semester, she continued to teach as an adjunct lecturer. In November 1984, claimant was notified that she would be reappointed as adjunct lecturer for the spring 1985 semester, which commenced February 4, 1985 and ended June 6, 1985. On December 27, 1984, after her benefits flowing from her termination as registrar ceased, claimant filed for additional unemployment benefits for the winter vacation period between the fall 1984 and spring 1985 semesters. An Administrative Law Judge reversed the local unemployment office and held that claimant was entitled to benefits.

In February 1985, claimant was notified that her lecturer's position would again be assured for the fall 1985 semester; nevertheless, on May 31, 1985, she filed for additional benefits for the summer vacation period between the spring and fall 1985 semesters. The local office determined that she was eligible to receive benefits. The University appealed both the local office determination allowing for these benefits and the earlier determination of the Administrative Law Judge awarding benefits during claimant's winter vacation. However, the University withdrew its request for a hearing on the 1985 summer vacation period pending the outcome of the Unemployment Insurance Appeal Board's decision on claimant's entitlement to benefits during the 1984 winter vacation period.

With respect to that case, the Board ultimately concluded that claimant was entitled to receive benefits. In doing so, the Board observed that "[c]laimant's earnings as an adjunct lecturer were substantially less than her base period earnings as an associate registrar * * * [and that she] was not subject to the provisions of * * * Labor Law [§ 590 (10)] during [the 1984 winter intersession]". Although the University filed a notice of appeal from this decision, that appeal was not perfected.

Thereafter, the Administrative Law Judge, believing himself to be bound by the Board's decision in the winter vacation case, found that claimant was also entitled to benefits for the 1985 summer vacation period. The Board affirmed, prompting this appeal by the University. The University maintains, as it has throughout, that the Administrative Law Judge incorrectly compared claimant's 1983 base period earnings with her earnings for the 1984 school year to determine whether she was eligible for unemployment during the summer of 1985. We agree.

Generally, an agency's interpretation of statutes is afforded great weight, and will be upheld so long as it is not irrational or unreasonable (Matter of Lintz [Roberts], 89 AD2d 1038). Because the issue presented herein involves the interpretation of a statute, Labor Law § 590 (10), however, it is more appropriately for judicial resolution (see, Matter of Lintz [Roberts], supra). Moreover, in this instance the agency interpretation is unreasonable.

Labor Law § 590 (10) precludes some individuals employed with educational institutions from receiving unemployment benefits "during the period between two successive academic years or terms * * * provided * * * there is a reasonable assurance that the claimant will perform services in such capacity for any such institution or institutions for both of such academic years or such terms" (emphasis supplied). On December 24, 1986, the United States Department of Labor issued an unemployment insurance program letter to guide State agencies in applying this statutory exception to unemployment insurance entitlement. The letter declares, "Reasonable assurance exists only if the economic terms and conditions of the job offered in the second period are not substantially less (as determined under State law) than the terms and conditions for the job in the first period." In a field memorandum dated March 2, 1987, the State Department of Labor further refined the United States Department of Labor's interpretation of "reasonable assurance" to mean "the same 'ten per cent' criterion we use for determining if a job offer is 'substantially less' favorable to the claimant than the prevailing wage" (see, Labor Law § 593 [2] [d]).

At issue here is what the terms first and second period mean in the United States Department of Labor's letter. Claimant maintains that the Board correctly compared her 1983 base period earnings, that is, "the period of fifty-two consecutive weeks ending on the Sunday immediately preceding [her] filing of [her] valid original claim" (Labor Law § 520),

on September 3, 1984, an amount approximating $28,000, with her earnings for 1984, the year she worked only as an adjunct lecturer. In contrast, the University contends, and rightly we believe, that claimant's base period earnings have no relevancy in these circumstances, that her earnings during successive academic years or terms are the only periods to be considered, and that the Board should therefore have compared claimant's earnings for the 1985 spring term with her earnings for the 1985 fall term.

And whether the statute directs a year by year or term by term comparison is of no practical moment in this particular case because of the amount of claimant's earnings. For the fall of 1984 and spring of 1985, she earned $1,918.12 and $2,192, respectively, for a total of $4,110.12 during the 1984 academic year. In addition, she earned $3,836 for the fall of 1985 and $3,261 for the spring of 1986, for a total of $7,052 for the 1985 academic year. Consequently, whether the comparison employed is successive academic years or terms, claimant was reasonably assured that "the economic terms and conditions of the job offered in the second period [were] not substantially less * * * than the terms and conditions for the job in the first period", whether the first and second periods be the 1984 and 1985 academic years or the 1985 spring and fall semesters. Under either comparison, claimant earned substantially more during the second period and, hence, she was not entitled to benefits under Labor Law § 590 (10).

Inasmuch as the decision of the Board incorrectly compared claimant's base period earnings for the 1983 academic year with her earnings for the 1984 academic year to determine whether she was eligible to receive benefits for the 1985 summer vacation, it is contrary to the statutory language and must be reversed.

Decision reversed, without costs, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent with this court's decision. Mahoney, P. J., Weiss, Mikoll, Yesawich, Jr., and Levine, JJ., concur.